\ [DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 9, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14897
Non-Argument Calendar

_____

D. C. Docket No. 03-00075-CV-WLS-1

ANTOINE MOODY,

Plaintiff-Appellant,

versus

CITY OF ALBANY, GEORGIA, et al.,

Defendants,

JOE MESSER, SCOTT MULLEN,
individually and in their official capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(April 9, 2007)**

Before BLACK, MARCUS and HILL, Circuit Judges.

PER CURIAM:

Antoine Moody appeals the grant of summary judgment to defendant Officers Joe Messer and Scott Mullen of the City of Albany Police Department, in their individual capacities, on Moody's claims under 42 U.S.C. § 1983, § 1985 and § 1986 for conspiracy to violate his constitutional rights and for malicious prosecution. The district court granted summary judgment to Messer and Mullen, holding that there was no evidence in the record from which to conclude that they joined a conspiracy to maliciously prosecute or deny Moody of any constitutional rights. For the following reasons, we shall affirm.

I.

The case arises out of an incident in which Moody was arrested for obstruction of justice for allegedly interfering during the course of the arrest of the driver of a car in which Moody was a passenger.[1] The vehicle was stopped by Messer and Mullen, officers of the Albany Police Department (the "city officers"), and, a short while later, two Dougherty County Sheriff's Deputies (the "county deputies") arrived on the scene. Messer asked the county deputies if they had a machine to use in administering a field sobriety test. The county deputies replied that they did and got out of their vehicle to administer the test. At some point, the

_____

[1]The charges were subsequently dropped.

2

county deputies administered a field sobriety test on the driver, Morrison.

Meanwhile, however, an argument erupted between the occupants in the vehicle and the county deputies and city officers. Although the exact reason and nature of the argument is disputed by the parties, Moody admits that he began yelling at the deputies and officers. Moody claims that he was pushed and shoved while being pulled out of the car and placed under arrest by the county deputies.[2]

Moody was charged with obstruction of a police officer because his conduct allegedly interfered with the county deputies' attempt to conduct a field sobriety test on Morrison. In addition, Moody's conduct prevented the county deputies from talking to Morrison and hearing his responses.

Moody claims, however, that he was arrested because he refused to promise not to report the deputies' excessive use of force on both himself and the other occupants of the car in return for the dropping of all charges against the car's occupants. Moody claims that the county deputies and the city officers entered into a conspiracy to "cover up, hide, and keep secret the misconduct of the defendants" during the incident and to maliciously prosecute him for refusing to go along with the conspiracy.

II.

_____

[2]Moody does not allege that he suffered any injury requiring medical attention.

First, with respect to Moody's claim that the defendants conspired to deprive him of his constitutional rights, we agree with the district court that Moody offers absolutely no evidence that either city officer entered into any conspiracy or took any act to deprive him of a constitutional right. At most, Moody offers only vague speculation as to what the county deputies and the city officers discussed during the incident. Moody offers not a single shred of evidence of a conspiracy beyond this speculation. On the contrary, Moody's sworn deposition testimony was that he observed only the two county deputies talking to each other immediately prior to one of them approaching him with the suggestion of trading freedom (dropping of all charges) for silence about any official misconduct.[3] In the complete absence of evidence of any agreement between the county deputies and the city officers to deprive him of a constitutional right, Moody's claim must fail.

Additionally, Moody does not state a claim under Section 1985 because he does not allege, as it requires, that defendant's alleged misconduct was accompanied or motivated by racial animus. *See Griffin v. Breckinridge*, 403 U.S. 88 (1971). Moody's claim is merely that the city officers acted out of self-interest in an attempt to cover up their alleged excessive use of force. Such allegations do

---

[3]The district court correctly held that Moody's attempt to create an issue of fact here by the subsequent proffer of a "sham affidavit" directly contradicting this earlier sworn testimony was to be rejected.

not state a claim under Section 1985.[4] Nor did Moody allege any facts from which such racial animus could be inferred.

Moody's claim for malicious prosecution must fail because he was not arrested by these defendants. The county deputies were the ones who arrested Moody, transported him to jail and booked him.[5] The record evidence was that neither Messer nor Mullen ever touched or even spoke to Moody during the entire incident.[6]

Finding no merit in any of Moody's other claims of constitutional violation, the district court's grant of summary judgment to defendants is due to be

AFFIRMED.

---

[4]Moody's Section 1986 claim, failure to prevent a Section 1985 violation, fails in the absence of a valid Section 1985 claim. See 42 U.S.C. § 1986.

[5]These deputies were named defendants but Moody settled with them and they were dismissed.

[6]Additionally, this state law claim may not be pursued in the absence of any evidence, as here, that the defendant was actually prosecuted. *Walker v. Bishop, Georgia Kraft Co., v. Bishop*, 169 Ga. App. 236 (1983).